*Alfred Yancey v. State of Maryland*, No. 2159, September Term, 2024. Opinion by Nazarian, J.

## JURY SELECTION – *BATSON* CHALLENGES – APPELLATE REMEDIES

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights forbid the use of peremptory juror strikes in a racially discriminatory manner. Under *Batson v. Kentucky*, a trial court must undertake a three-step process whenever a party alleges that their opponent is using strikes in this manner. *First*, the challenging party must present a *prima facie* case of discriminatory strikes. *Second*, the challenged party is given opportunity to give race-neutral explanations for their strikes. *Third*, the challenging party must have a chance to rebut. If any of these steps is skipped and appellate review occurs within roughly two years of the trial error, the proper appellate remedy is a limited remand to provide an opportunity, if possible, to complete whichever steps were skipped.

## JURY SELECTION – VOIR DIRE – DECLINING REQUESTED QUESTIONS

In Maryland, we employ a limited *voir dire*, and the only required questions are those that seek to elicit grounds for a for-cause strike: statutory ineligibility to serve as a petit juror or biases directly related to the crime, the witnesses, or the defendant. The court has the discretion to decline to ask questions that seek to elicit grounds already covered by other questions.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2159

September Term, 2024

_____

ALFRED YANCEY

v.

STATE OF MARYLAND

_____

Wells, C.J.,
Nazarian,
Harrell, Glenn T., Jr.,
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: July 30, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Measure twice, cut once. Alfred Yancey appeals from his conviction by a jury in the Circuit Court for Baltimore City for gun crimes. He presents for our review two questions about the jury selection process for his trial. We find legal error in connection with one question but not the other, affirm in part, and order a limited remand to complete a final step.

## I.    BACKGROUND[1]

In July 2024, the State charged Mr. Yancey with one count of possession of a firearm by a prohibited person and one count of possession of ammunition by a prohibited person. He was tried before a jury on November 1, 2024, in the Circuit Court for Baltimore City, and the jury convicted him on both counts. The court sentenced him to five years, suspending all but three years for the first count, and one year concurrent for the second count.

Near the end of jury selection, Mr. Yancey raised a *Batson*[2] challenge that the circuit court denied:

> [THE DEFENSE]: Your Honor, the defense is raising a *Batson* challenge at this time. The last -- the State has struck three jurors, all of which have been black persons, Juror 9077, 9165 --
>
> THE COURT: Hold on, go one at a time.
>
> [THE DEFENSE]: 9077.
>
> THE COURT: All right. State, can you tell me why you --

---

[1] Because both questions presented in this appeal pertain to the jury selection process, we don't need to recount the facts adduced at trial.

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986) (peremptory juror strikes cannot be used in an unlawfully discriminatory manner).

[THE STATE]: It was his employment.

THE COURT: Go ahead.

[THE STATE]: He's a clergy member Pastor, so based on his employment, I did not want him on the jury.

THE COURT: Okay. Next?

[THE DEFENSE]: 9165.

[THE STATE]: 9165 was wearing sunglasses, self-employed and had a suitcase in the courtroom.

THE COURT: I saw that, next?

[THE DEFENSE]: 9181.

[THE STATE]: Her husband has cancer and she retired from the FBI.

THE COURT: And I was going to ask if we should have put her at the end actually.

[THE STATE]: Yeah.

THE COURT: All right. So you haven't made a *prima facie* case, please step back.

The circuit court also declined earlier to ask the jury a few of Mr. Yancey's requested *voir dire* questions, in particular proposed Questions Nine and Ten:

THE COURT: All right. Do you have an exception to *voir dire*?

* * *

[THE DEFENSE]: Yes, Your Honor, I would, the defense proposed *voir dire* number nine --

THE COURT: All right. Hold on for a second, please, let me get it. Uh-huh?

[THE DEFENSE]: Legal knowledge, have you or a close friend or relative even [sic] been trained or employed in law, law enforcement or a law related field? In other words, have you or a close friend or relative ever been A, trained or employed as a law clerk, paralegal, judge, legal secretary, lawyer or court employee; B, been trained or employed as a law enforcement, correction, security, parole or probation office[r] or investigator; or C, studied law, criminology,

2

forensic science or any similar field of study or worked in a related occupation not already identified.

THE COURT: I'm not going to ask that question, I asked if they or someone they're close to worked in law enforcement and that will come up in that question. And plus their occupations should be listed. If they're not, I'll ask them about that.

[THE DEFENSE]: Okay.

THE COURT: Okay. Any other exceptions?

[THE DEFENSE]: Yes, Your Honor. Defense proposed number 10, court experience. Are you or a close friend or relative –

\* \* \*

THE COURT: I see where there's three parts to this, court experience?

[THE DEFENSE]: Yes, Your Honor.

THE COURT: First of all, I don't think it's proper to ask like a three-part question like that, but I'm not going to ask that. Whether or not they were a plaintiff or a defendant, a party or a witness, juror or grand jury, I'm not going to ask that.

Mr. Yancey submitted Questions Nine and Ten to the court in writing ahead of time:

9. <u>Legal Knowledge</u>: Have you or a close friend or relative ever been trained or employed in the law, law enforcement, or a law-related field? In other words, have you or a close friend or relative ever:

a. been trained or employed as a law clerk, paralegal, judge, legal secretary, lawyer, or court employee;

b. been trained or employed as a law enforcement, corrections, security, parole or probation officer or investigator; or

c. studied law, criminology, forensic science, or any similar field of study, or worked in a related occupation not already identified?

10. <u>Court Experience</u>:

a. Are you or a close friend or relative now a plaintiff or defendant in a civil or criminal case which may be tried

3

in a Maryland court?

b. Have you ever been a party or witness in a trial involving:

> i. Illegal Possession of a Firearm and Illegal Possession of Ammunition?

c. Have you ever served as a juror or grand juror, in this court or any other court?

Mr. Yancey noted a timely appeal. We supply additional facts below as they pertain to our analysis.

## II. DISCUSSION

Mr. Yancey raises two questions for our review, which we rephrase[3] as follows:

1. Did the circuit court err in denying Mr. Yancey's *Batson* challenge?

2. Did the circuit court abuse its discretion by not asking certain *voir dire* questions despite Mr. Yancey asking for them?

We answer the *first* question in the affirmative. A *Batson* challenge triggers a three-step process, and the circuit court here skipped the third step, at which time the challenger must be given an opportunity to rebut the challenged party's neutral explanation. As an appellate remedy, in line with precedent involving situations where the circuit court

---

[3] Mr. Yancey phrased his Questions Presented as:

1. Did the trial court err by finding that Mr. Yancey had not made a *prima facie* case of discrimination under *Batson*?

2. Did the trial court abuse its discretion by refusing to ask proposed defense *voir dire* questions on jurors' law enforcement training and education as well as prior experience with criminal trials?

The State phrased the Questions Presented as:

1. Did the trial court properly deny Mr. Yancey's *Batson* challenge?

2. Did the trial court properly exercise its discretion when it declined to ask two proposed voir dire questions?

4

wrongfully skipped a *Batson* step and our review occurred within roughly two years of the error, we order a limited remand so that Mr. Yancey can have an opportunity to rebut. We answer the *second* question in the negative and affirm the circuit court's decision not to ask Mr. Yancey's requested questions. The court already covered, with the questions it asked, the potential biases Mr. Yancey wished to investigate.

*First*, the ultimate standard of review for the denial of a *Batson* challenge is clear error, as that decision is at heart a credibility determination. *Gilchrist v. State*, 340 Md. 606, 627 (1995) (*first citing Stanley v. State*, 313 Md. 50, 84 (1988); *and then citing Purkett v. Elem*, 514 U.S. 765, 767–69 (1995) (per curiam)); *see also Batson v. Kentucky*, 476 U.S. 79, 98 n.21 (1986) ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."); *Hernandez v. New York*, 500 U.S. 352, 364–65 (1991). That said, we owe no deference in the event of a legal error, and a skipped step in a constitutionally required procedure qualifies. *See Stanley*, 313 Md. at 75–76 (ordering a limited remand to complete *Batson* Step Two, which the court skipped at trial); *Chew v. State*, 317 Md. 233, 239 (1989) (same).

*Second*, we review a circuit court's decision not to ask requested jury questions during *voir dire* for an abuse of discretion:

> Decisions of a trial court during *voir dire* are generally reviewed under an abuse of discretion standard. *See Thomas v. State*, 454 Md. 495, 504 (2017). The "standard is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present." *Washington v. State*, 425 Md. 306, 313 (2012). In order to make this determination, "an appellate court looks at

5

the record as a whole to determine whether the matter has been fairly covered." *Id.* at 313–14.

*Lewis v. State*, 262 Md. App. 251, 278 (2024).

### A. The Circuit Court Erred Legally When It Denied Mr. Yancey An Opportunity To Rebut At *Batson* Step Three.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights prohibit the exclusion of jurors based on membership in protected classes, the most well-known of those being race. *Batson*, 476 U.S. at 85–88; *Gilchrist*, 340 Md. at 625; *see also* U.S. CONST. amend XIV, § 1;[4] MD. DECL. OF RIGHTS art. 24.[5] The Supreme Court of the United States outlined a three-step process a trial court must undertake when a party challenges their opponent's use of peremptory juror strikes in an allegedly racially discriminatory manner:

> [In *Step One*], the complaining party has the burden of making a *prima facie* showing that the other party has exercised its peremptory challenges on an impermissibly discriminatory basis, such as race or gender. Moreover, "[w]hether the

---

[4] In *Batson*, the Supreme Court of the United States treated this right as held by both the defendant and the struck jurors, but has since backed down from that notion. *Contrast, e.g., Batson*, 476 U.S. at 87 (discussing discriminatory harms to struck jurors), *with Georgia v. McCollum*, 505 U.S. 42, 56–57 (1992) (recognizing barriers to struck jurors' ability to bring suit over a *Batson* violation). In Maryland, under our Constitution, our courts have recognized that the *Batson* right is held equally by defendant and juror. *See Ray-Simmons v. State*, 446 Md. 429, 435 (2016); *Edmonds v. State*, 372 Md. 314, 329 (2002).

[5] Recently, in *Moore v. Maryland Hemp Coalition*, 267 Md. App. 169 (2025), we acknowledged that the People of Maryland amended the Declaration of Rights in 2024 to add Article 48, which recognizes "individual[s'] rights to liberty and *equality*" and protects reproductive freedom as one of those rights. MD. DECL. OF RIGHTS art. 48 (emphasis added). In *Moore*, we contemplated that Article 48 can serve as an additional textual hook to recognize an equal protection guarantee under the Maryland Constitution. 267 Md. App. at 226 n.21.

requisite *prima facie* showing has been made is the trial judge's call . . . ."

[In *Step Two*], once the trial court has determined that the party complaining about the use of the peremptory challenges has established a *prima facie* case, the burden shifts to the party exercising the peremptory challenges to rebut the *prima facie* case by offering race-neutral explanations for challenging the excluded jurors. The "explanation must be neutral, related to the case to be tried, clear and reasonably specific, and legitimate." The reason offered need not rise to the level of a challenge for cause. "At this step of the inquiry, the issue is the facial validity of the . . . explanation." It is insufficient, however, for the party making the peremptory challenges to "merely deny[] that he had a discriminatory motive or . . . merely affirm[] his good faith."

[In *Step Three*], the trial court must "determine[] whether the opponent of the strike has carried his burden of proving purposeful discrimination." This includes allowing the complaining party an opportunity to demonstrate that the reasons given for the peremptory challenges are pretextual or have a discriminatory impact. It is at this stage "that the persuasiveness of the justification becomes relevant . . . ." "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."

While the complaining party has the ultimate burden of proving unlawful discrimination, and therefore should be offered the opportunity to demonstrate that the reasons offered were merely pretextual, the court may find that the reasons offered were pretexts for discrimination without such demonstration from the complainant.

*Gilchrist*, 340 Md. at 625–27 (citations omitted) (collating and summarizing *Batson* process).

Mr. Yancey contends that the circuit court denied his *Batson* challenge wrongfully at Step One when it said, "[Y]ou haven't made a *prima facie* case, please step back." The State responds that once the challenged party gives its Step Two explanations, Step One

7

becomes moot, and contends that the circuit court did not err clearly in finding the State's explanations credible. We agree with the State on mootness and are constrained under the governing standard of review to say the circuit court did not err clearly in finding the State credible. But construing the court's ruling that way leaves a distinct legal error in the resulting *Batson* process: a challenging party *must* be given opportunity to rebut at Step Three, and that step was skipped in this case.

*First*, we address Mr. Yancey's contention that the circuit court erred clearly in saying he hadn't made a *prima facie* case. If we agreed with him that the circuit court had denied his challenge at Step One, we would agree as well that the circuit court erred clearly. To its credit, the State concedes the latter point. But once the trial court elicits a challenged party's explanations under Step Two, as it did here, the question of the Step One *prima facie* case becomes moot. *Ray-Simmons v. State*, 446 Md. 429, 437 (2016). The decision before us then is the circuit court's decision to deny Mr. Yancey's *Batson* challenge at Step Two, because it elicited and accepted the State's explanations as satisfactorily race-neutral and credible (despite misspeaking in the moment) without allowing him an opportunity to make a case before the court made a Step Three finding.

*Second*, the ultimate decision to deny the challenge, as discussed above, is reviewed normally for clear error, and on appeal "[a]ny reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation." *Id.* at 436 (*quoting Edmonds v. State*, 372 Md. 314, 330 (2002)). This is because the trial court's ultimate decision to accept a challenged party's explanation is, at its heart, a credibility determination. *See Acquah v. State*, 113 Md. App. 29, 58 (1996) ("If the trial court finds the prosecutor's

8

explanation credible, there is little left to review. Simply put, if the trial court believes the prosecutor's non-racial justification for the strikes, and that finding is not clearly erroneous, that is the end of the matter."). If the trial court finds the challenged party credible, we won't reverse absent explicit reference to a protected class or category. *See id.* at 58–59 (finding, where defendant questioned only the prosecutor's credibility and didn't argue that the State's explanation for its peremptory strikes was "inherently discriminatory," that the circuit court did not clearly err in believing the State's explanation); *Ray-Simmons*, 446 Md. at 436 (*citing Edmonds*, 372 Md. at 330). Such an explicit reference is absent here.

*Finally*, though, there was an independent legal error in the *Batson* process itself in this case. In Maryland, a challenging party *must* be given an opportunity during Step Three to rebut the challenged party's Step Two explanations. *See Gilchrist*, 340 Md. at 626–27 (*citing Stanley*, 313 Md. at 61–62).

> So, once the prosecutor has come forth with reasons to rebut the defendant's case, the defendant then "*must* be afforded a fair opportunity to demonstrate that [the prosecutor's] assigned reason for [the peremptory challenge] was a pretext or discriminatory in its application."
>
> * * *
>
> [T]he defendant "may succeed in this [rebuttal] either directly by persuading the court that a discriminatory reason more likely motivated the [prosecutor] or indirectly by showing that the [prosecutor's] proffered explanation is unworthy of credence." And once the trial court has all the facts and arguments before it, it "then will have the duty to determine if the defendant has established purposeful discrimination."

*Stanley*, 313 Md. at 62 (most alterations in original) (emphasis added) (citations omitted).

The Supreme Court of the United States recently re-emphasized this point, holding this

term, that a trial court's decision not to allow rebuttal opportunity at Step Three compels relief:

> We need not belabor the matter. After a prosecutor asserts race-neutral reasons for a peremptory strike, the defense counsel must at least have an opportunity to argue that the asserted race-neutral reasons were not the actual reasons—that is, the reasons were pretextual. Then, the trial court can determine whether those asserted reasons were the actual reasons or instead were pretextual.

*Pitchford v. Cain*, 146 S. Ct. 1345, 1353 (2026).

Here, the circuit court told Mr. Yancey's counsel to step back immediately after the State offered its Step Two explanations without allowing Mr. Yancey an opportunity to rebut at Step Three. Skipping a step in a prescribed and constitutionally demanded procedure is legal error and grounds for appellate relief.

The trickier question is the appropriate appellate remedy. In the past, when Maryland courts were asked to devise an appellate remedy for wrongfully skipping a *Batson* step and appellate review occurred within roughly two years of the trial error, we have declined to order outright a new trial. Instead, we have ordered limited remands. *See Chew*, 317 Md. at 239; *Mejia v. State*, 328 Md. 522, 540–41 (1992) (ordering limited remand to complete *Batson* Step Two in part because "[l]ess than two years [had] passed since jury selection began in the case"); *Stanley*, 313 Md. at 75–76; *but see Ray-Simmons*, 446 Md. at 446–48 (noting that four years since trial would be too long a gap for limited remand even if the prosecution hadn't been given an opportunity to explain its reasoning at *Batson* Step Two). In line with precedent, the circuit court should, on remand, determine first whether "the passage of time precludes fair consideration of the relevant issues."

10

*Chew*, 317 Md. at 239. If so precluded, the court *must* "simply order a new trial." *Id.* This first-order determination includes a determination whether the circuit court is able to "reconstruct [the] jury that tried and convicted" Mr. Yancey. *Ray-Simmons*, 446 Md. at 447. If the circuit court decides that "a reasonable possibility exists that reconstruction can be fairly accomplished," including recalling and resummoning the jurors, then it shall do so and then allow Mr. Yancey opportunity to rebut the State's explanations, *i.e.*, to recreate the Step Three that didn't occur at his original trial. *Chew*, 317 Md. at 239. The record to that point drives the new process: the State may not supplement its previous Step Two explanations, and isn't allowed do-overs or *post hoc* elaboration. Should the circuit court, after Mr. Yancey's rebuttal, still find the State's original explanations satisfactorily race neutral *and* credible, his convictions can, in light of our resolution of his other appellate issue, stand. If, however, the circuit court is no longer convinced, it should vacate his convictions and order a new trial. *See id.*; *Meija*, 328 Md. at 540–41; *Stanley*, 313 Md. at 75–76; *Edmonds*, 372 Md. at 341–42.

**B.      The Circuit Court Declined Appropriately To Ask Mr. Yancey's Requested *Voir Dire* Questions Because The Court Covered Substantially The Biases He Sought To Elicit.**

Mr. Yancey contends also that the circuit court abused its discretion in declining to ask his requested *voir dire* Questions Nine and Ten. We disagree.[6]

In Maryland, we employ a limited *voir dire*, which means that "a trial court need

---

[6] We reach Mr. Yancey's second question because the relief we awarded under his first question presented is narrower than the reversal and new trial he requests under the second.

11

not ask a *voir dire* question that is not directed at a specific cause for disqualification or is merely fishing for information to assist in the exercise of peremptory challenges." *Pearson v. State*, 437 Md. 350, 356–57 (2014) (cleaned up) (citations omitted). Sometimes *voir dire* questions are mandatory by their nature—that is, not asking them is so unreasonable as to be categorically an abuse of discretion:

> On request, a trial court must ask a *voir dire* question if and only if the *voir dire* question is "reasonably likely to reveal [specific] cause for disqualification[.]" *Moore v. State*, 412 Md. 635, 663 (2010) (citation omitted). There are two categories of specific cause for disqualification: (1) a statute disqualifies a prospective juror; or (2) a "collateral matter [is] reasonably liable to have undue influence over" a prospective juror. [*Washington v. State*, 425 Md. 306, 313 (2012)] (citation omitted). The latter category is comprised of "biases directly related to the crime, the witnesses, or the defendant[.]" *Id.* at 313 (citation omitted).

*Id.* at 357 (most alterations in original). Based on that standard, courts have assembled a list of categories of mandatory questions:

> [W]e [have] identified the mandatory areas of inquiry in *voir dire*, based on our prior cases, as: (1) bias against an accused's race, ethnicity, or cultural heritage; (2) whether the religious affiliation of a juror would bias the juror, given the nature of the case; (3) in capital cases, the ability of a juror to convict based upon circumstantial evidence; (4) whether a juror would place undue weight on police officer credibility; (5) strong feelings regarding violations of drug laws; . . . (6) strong feelings regarding alleged sexual assault against a minor[; and (7) questions designed to uncover bias concerning child-witness credibility where a case involves testimony from a child witness].

*Mitchell v. State*, 488 Md. 1, 13–14 (2024) (cleaned up) (citations and footnote omitted); *id.* at 26–27 (adding category (7)). And if any part of a requested compound question is

12

mandatory, the court should clip it out and ask it independently. *See Pearson*, 437 Md. at 369 n.6.

As to Question Nine, the "bias[] directly related to the crime, the witnesses, or the defendant," *Id.* at 357 (*quoting Washington*, 425 Md. at 313), that Mr. Yancey sought to investigate was whether any potential juror was predisposed to overly credit police witness testimony. But after reviewing "the record as a whole," we hold "th[at] matter [was] fairly covered," *Lewis*, 262 Md. App. at 278 (quoting *Washington*, 425 Md. at 313–14), when the circuit court asked the following questions:

> Have [you] or someone you're extremely close to, ever been employed by a law enforcement agency or by a firm or agency that represents or provides services to people charged with committing a crime? Examples of law enforcement agencies are the State's Attorney's Office, the U.S. Attorney's Office, any police department, FBI, any prison or detention center. Examples of firms or agencies that provide services to people charged with committing a crime would be the Office of the Public Defender or a criminal defense law firm.
>
> * * *
>
> You are instructed that a police officer's testimony should be considered by you, just as any other evidence in this case and in evaluating their credibility, you should use the same guidelines which you apply to any other witness. In no event should you give any greater or lesser credibility to the testimony of any witness, simply because they are a police officer. Does any perspective [juror] feel you cannot follow this instruction and would give the testimony of a police officer more weight or less weight than the testimony of any other witness, simply because they are a police officer?

The circuit court didn't abuse its discretion when it declined to ask Question Nine as proffered because the potential police-credibility bias was already "fairly covered," especially when the second-quoted question cut to the chase. *Id.*

13

As for Question Ten, the circuit court was on shakier ground when it refused to ask the whole question based solely on its compound form. *See Pearson*, 437 Md. at 369 n.6. Even so, we find no abuse of discretion because each of the three sub-questions were "fairly covered" as well by other questions the court asked. *Lewis*, 262 Md. App. at 278 (*quoting Washington*, 425 Md. at 314).

*First*, as to Question Ten (a), we can't discern what "bias[] *directly* related to the crime, the witnesses, or the defendant," *Pearson*, 437 Md. at 357 (emphasis added) (*quoting Washington*, 425 Md. at 313), would be formed by being a party on either side to a civil case, or being related to a civil party. As to the criminal half of that question, an individual can't be a plaintiff in a criminal case. And the court already had asked if any juror had been a criminal defendant:

> Has any member of the jury panel ever been a victim of a violent crime or a crime involving a handgun, and the second part is have you or someone that you're very close to, ever been arrested, charged or convicted of a crime other than a minor motor vehicle crime?

Factually, this covers the same ground, because to have become a defendant in a criminal case, one had to have been charged.

*Second*, as to Question Ten (b), the bias Mr. Yancey sought to investigate was "directly related to the crime." *Pearson*, 437 Md. at 357 (*quoting Washington*, 425 Md. at 313). But much like our analysis regarding Question 9, the bias was already "fairly covered," *Lewis*, 262 Md. App. at 278 (*quoting Washington*, 425 Md. at 314), when the court cut to the chase:

> The defendant is charged with possession of a regulated

14

> firearm after having been convicted of a crime that disqualifies him from possessing a firearm and illegal possession of ammunition. Does any member of the jury panel hold strong feelings about these types of crimes?

To the extent that being a party or a witness to a trial involving these charges would give rise to bias, a juror would answer affirmatively to a "strong feelings" question. If they didn't develop strong feelings from their experience, logically they didn't form a bias from that experience. And if a court can decline to ask if any potential juror had been *victim* of a burglary in a burglary trial, it seems reasonable that a court can decline to ask if any potential juror had been a *party* or a *witness* in a trial involving the same charges as those at hand. *See Yopps v. State*, 234 Md. 216, 221–22 (1964) (with regard to a burglary question: "Aside from [waiver], it is our view that the question which appellant sought to have propounded to the jury did not relate to a cause of disqualification under the circumstances.").

 *Third*, as to Question Ten (c), we struggle again to identify what "bias[] *directly* related to the crime, the witnesses, or the defendant," *Pearson*, 437 Md. at 357 (emphasis added) (*quoting Washington*, 425 Md. at 313), the question sought to investigate. To the extent that perhaps being a juror or grand juror in a similar trial might have induced bias in a potential juror, that bias also was covered by the "strong feelings" question.

        **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REMANDED WITHOUT AFFIRMING OR REVERSING FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. HALF OF THE COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE, HALF TO BE PAID BY**

**APPELLANT.**